**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HAROLD HALPERN,<br><br>Plaintiff,<br><br>v.<br><br>CENTROID SYSTEMS, INC., CENTROID SYSTEMS CORPORATION, CENTROID SYSTEMS, LLC and ABC CORPS. (1-10),<br>Defendants | Case No. 2:24-cv-07037<br><br>**OPINION ON MOTION TO DISMISS OR TRANSFER VENUE** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint or Transfer Venue. For the reasons set forth below, the Motion is **GRANTED IN PART** and **DENIED IN PART**. An appropriate order follows.

**I.   Background[1]**

This is an employment discrimination dispute arising out of Plaintiff Harold Halpern's employment as a sales director for Centroid Systems, LLC (f/k/a Centroid Systems, Inc.)[2] from November 11, 2013 until his termination on January 12, 2024. Halpern brings two claims against the defendants. First, Halpern alleges that Centroid violated the New Jersey Law Against Discrimination, N.J. Stat. § 10:5-12 ("NJLAD"), by terminating his employment because of his age. Second, he alleges that Centroid breached the implied covenant of good faith and fair dealing with respect to his compensation agreement by intentionally delaying invoices to customers Halpern solicited until after he was let go, thereby avoiding their obligation to pay his commission. This Court has subject matter jurisdiction based on the parties' diversity of citizenship. 28 U.S.C. § 1332.

---

[1] Unless otherwise indicated, the operative facts are drawn from Plaintiff's Amended Complaint, ECF No. 3. The Court accepts Plaintiff's allegations as true for the purpose of this motion.

[2] Centroid Systems, LLC and its predecessor Centroid Systems, Inc. are referred to collectively as "Centroid." This shorthand does *not* include Centroid Systems Corporation. Halpern's claims against Centroid Systems Corporation are addressed *infra* at Part IV.

1

According to his First Amended Complaint, Halpern is a 61-year old New Jersey resident who worked as a sales director for Centroid from November 11, 2013 through January 12, 2024. First Amended Complaint ("FAC"), ¶¶ 6, 26, 27, ECF No. 3. Centroid is a Michigan-based technology services company that provides consulting and other cloud computing services to customers. *Id.* ¶¶ 8, 11. As a sales director, Halpern was tasked with soliciting new customers for Centroid in their Northeast Region, which includes New Jersey. *Id.* ¶ 20. Halpern was employed remotely and worked full time from his home in New Jersey. *Id.* ¶ 19.

Halpern alleges that throughout his employment with Centroid he always met his sales quotas, received positive job performance reviews, and was frequently among Centroid's highest-performing sales directors. *Id.* ¶¶ 31-38. Despite his strong performance, beginning in 2023, Centroid senior management began making age-related comments to Halpern in an effort to push him toward retirement. *Id.* ¶¶ 39-40. Halpern alleges the following age-related comments:[3]

- In September 2023, Jim Brull, one of Centroid's managing partners, told Halpern at a conference that Halpern was "getting too old for this stuff";
- In September 2023, Scott Whitely, Centroid's senior vice president of sales, told Halpern that "things were changing at Centroid" and that if Plaintiff did not want to "deal with" the changes, he should retire;
- In December 2023, Brull reacted to Halpern closing a sale by saying "not bad for an old guy" and suggesting that the deal should "put [Halpern] into retirement";
- Throughout 2023, Scott Morrell, Centroid's managing partner, repeatedly told Halpern and others that Halpern was getting "lazy" in his old age;
- In January 2024, Whitely told Halpern that he should consider retiring;
- For some period of time leading up to his termination, Whitely referred to Halpern as the "old guy" of the group.

FAC ¶¶ 44-48. Halpern alleges that when he resisted the pressure to retire, Centroid fired him, but disguised the firing as a "lay-off" even though no other employees were let

---

[3] Neither Halpern nor Centroid explicitly says whether any of the alleged interactions took place virtually. Halpern alleges that he was in New Jersey when these comments were directed at him. Halpern Decl. ¶ 49, ECF No. 7-2. Centroid says that "[a]ny alleged age-related comments were not said in New Jersey," Mot. 17, ECF No. 5-1, and points out that none of the individuals identified by Halpern live or work in New Jersey, ECF No. 5-2 ¶ 12 (Morrell lives and works in Michigan, while Brull and Whitely live and work in Texas). At this stage, the Court draws the reasonable inference that, unless otherwise specified, the alleged age-related comments were made remotely by Centroid's out-of-state managers and directed at Halpern while he was in New Jersey.

2

go and he was subsequently replaced by three younger sales directors. *Id.* at ¶¶ 43-55. Halpern believes that the real reason he was discharged was his age. *Id.* ¶ 58. This is the basis of Halpern's NJLAD discrimination claim.

Additionally, Halpern alleges that he had closed multiple deals with customers leading up to his firing. *Id.* ¶ 66. He claims that under the terms of his compensation plan, he was entitled to commissions on sales he closed *unless* he was terminated prior to Centroid receiving payment from the customer. *Id.* ¶¶ 61-65. Halpern believes that Centroid intentionally delayed invoicing the customers until he was fired, thereby avoiding their obligation to pay Halpern's commission. *Id.* ¶¶ 61-69. Halpern claims that Centroid's intentional delay violates the covenant of good faith and fair dealing with respect to his compensation agreement. *Id.* ¶ 70.

## II.     Procedural Background

Halpern first filed suit against Centroid in New Jersey Superior Court in Morris County on March 21, 2024. *See* Notice of Removal, ECF No. 1. Centroid removed the suit to this Court on June 14, 2024. *Id.* Plaintiff filed the operative Amended Complaint on June 20, 2024. FAC, ECF No. 3.

On July 8, 2024, Centroid filed its motion asking the Court to either dismiss this suit or transfer it to the U.S. District Court for the Eastern District of Michigan. Centroid argues that (1) the Court should dismiss the case pursuant to Rule 12(b)(2) because it lacks personal jurisdiction over the Centroid; (2) the Court should dismiss the case or transfer it to the Eastern District of Michigan pursuant to Rule 12(b)(3) and 28 U.S.C. § 1391 because venue is improper in New Jersey; (3) the Court should, alternatively, transfer the case pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interest of justice; and (4) the Court should dismiss Plaintiff's claim as to Defendant Centroid Systems Corporation under Rule 12(b)(6) for failure to state a claim. Halpern filed his opposition brief on August 5. Opp., ECF No. 7. Centroid filed its reply brief on August 12. Reply, ECF No. 8.

On August 13, Halpern submitted a letter asking the Court to strike Centroid's reply brief for two reasons: first, because it exceeded the page limit set by Local Rule 7.2, and second, because Centroid improperly used its reply brief as a vehicle to offer evidence in support of a previously undeveloped argument. Pl. Letter, ECF No. 9. Centroid responded with its own letter on the following day, acknowledging its error in violating the page limit and attaching a revised brief conforming to the 15-page limit. Def. Letter, ECF No. 10; Revised Reply, ECF No. 10-1. Centroid disputed that the new exhibits were improper, arguing that "the exhibits are directly relevant to an argument raised in Defendant's Moving Brief and are necessary to respond to Plaintiff's arguments raised in Plaintiff's Opposition Brief and Declaration." *Id.* at 1.

### III.   Motion to Strike Reply Brief

Before discussing the merits of Centroid's motion, the Court addresses Halpern's request to strike Centroid's reply brief attached exhibits. First, the Court will treat Centroid's August 14, 2024 letter as a motion for leave to file a conforming brief, and will **GRANT** the same. Centroid's original reply brief, ECF No. 8, is **STRICKEN**. Unless otherwise indicated, all references to the "reply brief" hereinafter refer to the revised reply brief docketed at ECF No. 10-1.

Halpern's second objection applies in equal force to the corrected brief as it did to the original brief. In his August 13 letter, Halpern points out that Centroid's reply brief attaches, for the first time, six exhibits (Exhibits C, D, E, F, G, and H to ECF No. 8-1) meant to demonstrate that Halpern has been a resident of Florida, not New Jersey, since 2016. Halpern argues that Centroid waived its Florida residence argument by failing to assert it in their moving brief. Pl. Letter 2, ECF No. 9. Centroid responds that the exhibits "are directly relevant to an argument raised in Defendant's Moving Brief and are necessary to respond to Plaintiff's arguments raised in Plaintiff's Opposition Brief and Declaration." Def. Letter 1, ECF No. 10. Centroid continues to rely on the new exhibits in their corrected reply brief. *See generally* Revised Reply, ECF No. 10-1.

"It is axiomatic that reply briefs should respond to the respondent's arguments or explain a position in the initial brief that the respondent has refuted." *Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*, 998 F. Supp. 447, 458 (D.N.J. 1998); *see also Hernandez v. T.S.A.*, No. 2:12-cv-02796, 2014 WL 60048 (D.N.J. Jan. 7, 2014) (applying rule in context of motion to dismiss). New arguments cannot be raised in a reply brief because the local rules do not ordinarily permit sur-reply briefs, *see* L. R. 7.1(d), so a party opposing a motion has "no opportunity to respond to newly minted arguments contained in reply briefs." *Bayer AG v. Schein Pharms., Inc.*, 129 F. Supp. 2d 705, 716 (D.N.J. 2001), *aff'd sub nom. Bayer AG v. Schein Pharms., Inc.*, 301 F.3d 1306 (Fed. Cir. 2002). "Furthermore, a 'passing reference' to an issue in an opening brief will not suffice to put a party on notice that the moving party is moving on that particular issue." *Id.* (citing *Laborers' Int'l Union v. Foster Wheeler Energy*, 26 F.3d 375, 398 (3d Cir. 1994)).

Centroid does not adequately advance a Florida residence argument in its moving papers. Between its 34-page moving brief and the accompanying 3-page declaration of Scott Morrell, Centroid hints at the argument in three dispersed sentences: first, in the introduction to its moving brief, it writes "Defendant's management actually believed that Plaintiff had been working remotely from Florida since October 2016." Mot. 2, ECF No. 5-1. Second, as a sidenote to their personal jurisdiction argument, Centroid repeats that "Defendant's management actually believed that Plaintiff had been working remotely from Florida since October 19, 2016." Mot. 11, ECF No. 5-1. Finally, in his declaration, Morrell states that "[s]ince October 19, 2016, Centroid management believed that Plaintiff was working remotely from Florida based on an email he sent." ECF No. 5-2 ¶ 10. These three

4

sentences constitute an exhaustive recitation of Centroid's Florida residence argument in its moving papers. Halpern's opposition brief includes no response to the Florida residence argument.

Centroid's reply brief shifts the Florida residence argument into focus. Centroid devotes the first three pages of the brief to the argument, Revised Reply 1-3, ECF No. 10-1, and sprinkles additional references throughout, *id.* 9-10, 12. It submits new exhibits, some of the which—like Centroid's own tax records and emails—were presumably in its possession all along, while others were apparently "revealed" by Centroid's "[f]urther research." Revised Reply 1, ECF No. 10-1. Centroid has not articulated any reason why it waited until its reply brief to provide its exhibits, and its passing, conclusory remarks in its moving papers are insufficient to put Halpern on notice that it was basing its motion on the Florida residence argument.

Moreover, Centroid's own reply brief makes clear that it neither "respond[s] to the [] arguments" raised in Halpern's opposition brief nor "explain[s] a position in the initial brief that [Halpern] refuted." *Elizabethtown Water*, 998 F.Supp. at 458. The reply boasts that "[n]ot once" in his opposition brief "does Plaintiff address Defendant's belief that Plaintiff had been working from Florida since October 19, 2016, based on an email he sent on that date." Revised Reply 1, ECF No. 10-1. Centroid cannot claim to respond to an argument that Halpern never made.

While the Court does not find it necessary to strike the reply brief in its entirety, it will **DISREGARD** Exhibits C, D, E, F, G, and H to Centroid's reply brief, and will **DISREGARD** the portions of the reply brief that rely on these exhibits—namely, Centroid's Florida residence argument. The Court will also **ORDER** the parties to exchange jurisdictional discovery to be concluded within ninety days. At the close of jurisdictional discovery, Centroid may, as appropriate, reassert its Florida residence argument in a renewed motion.

IV. **Failure to State a Claim Against Centroid Systems Corporation Pursuant to Fed. R. Civ. P. 12(b)(6)**

Halpern identified three named defendants in his Amended Complaint: Centroid Systems, Inc., its successor in interest Centroid Systems, LLC, and Centroid Systems Corporation, which Halpern alleges is a Centroid affiliate registered to do business in New Jersey that operated as an "integrated enterprise" with Centroid. FAC ¶ 16, ECF No. 3. Defendants move for dismissal as to Centroid Systems Corporation for failure to state a claim. To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Conclusory or 'bare-bones' allegations will [not] survive a motion to dismiss." *Fowler v. UPMC*

5

*Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). Defendants argue that Halpern's does not allege facts sufficient allow a reasonable inference that Centroid Systems Corporation—as distinct from Centroid Systems, LLC and/or Centroid Systems, Inc.—could be liable for the alleged misconduct. The Court agrees.

Halpern has not alleged an employee/employer relationship between himself and Centroid Systems Corporation, other than his general assertion that Centroid Systems Corporation was a "joint employer" alongside the other Centroid defendants. His claims against Centroid Systems Corporation are built solely on his observation that Centroid Systems Corporation is the only Centroid-related entity registered to do business in New Jersey and his conclusory allegation that it "functioned as an integrated enterprise" with Centroid. Halpern makes no effort to connect the dots between Centroid Systems Corporation and his employers and identifies no action taken by Centroid Systems Corporation giving rise to his claims. These allegations are not sufficient to support claims against Centroid Systems Corporation.

Defendants' motion to dismiss the claims against Centroid Systems Corporation is **GRANTED WITHOUT PREJUDICE** subject to jurisdictional discovery.

V.     **Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2)**

Centroid moves to dismiss for lack of personal jurisdiction. Once a defendant raises a jurisdictional defense under Rule 12(b)(2), the plaintiff bears the burden of establishing sufficient facts showing that jurisdiction is proper over each defendant. *Marten v. Godwin*, 499 F.3d 290, 295-96 (3d Cir. 2007). Where, as here, the Court has not held an evidentiary hearing on the motion, "the plaintiff need only establish a prima facie case of personal jurisdiction and ... is entitled to have [his] factual allegations taken as true and all factual disputes drawn in [his] favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). A plaintiff may not rely on the pleadings alone to make his prima facie case, but instead must produce "sworn affidavits or other competent evidence" to do so. *Patterson v. Fed. Bureau of Investigation*, 893 F.2d 595, 603-04 (3d Cir. 1990). Here, Halpern supports his allegations with three exhibits: sworn declarations from himself and his attorney, and a copy of the employment offer letter Halpern received from Centroid in 2013. *See* ECF No. 7-2.

Halpern has not argued that the Court has general personal jurisdiction over Centroid—only that the Court has specific personal jurisdiction with respect to his claims.[4]

---

[4] While the Third Circuit's "usual practice is to assess specific jurisdiction on a claim-by-claim basis ... it may not be necessary to do so for certain factually overlapping claims." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 318 (3d Cir. 2007). Neither party's briefs here attempt to differentiate between plaintiff's claims in their jurisdictional analyses, instead briefing the issue as though the two claims were one. Given the significant overlap in the facts on which the claims

The specific jurisdiction inquiry for a federal court sitting in diversity has two steps: "First, the court must apply the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction; then, the court must apply the precepts of the Due Process Clause of the Constitution." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). "In New Jersey, this inquiry is collapsed into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *Id.* "New Jersey courts look to federal law for the interpretation of the limits on *in personam* jurisdiction." *Id.* (citation omitted).

The Third Circuit uses a three-part test to determine whether a district court's exercise of specific personal jurisdiction comports with due process:

> [First,] the plaintiff must show that the defendant has minimum contacts with the forum such that it purposefully availed itself of the privilege of conducting activities within the forum and invoked the benefits and protections of the forum's laws. Second, the plaintiff's claims must arise out of or relate to at least some of those contacts, evidencing a strong relationship among the defendant, the forum, and the litigation. Finally, the exercise of jurisdiction over the defendant must comport with traditional notions of fair play and substantial justice such that the defendant should reasonably anticipate being haled into court in that forum.

*Hasson v. Fullstory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024) (citations and alterations omitted).[5]

Centroid contends that this case fits in the mold of cases like *Crosson v. TMF Health Quality Institute*, No. 20-cv-18800, 2023 WL 2609048 (D.N.J. Mar. 23, 2023) and *Tripp v. Ascentage Pharma Group International*, No. 22-cv-5934, 2023 WL 5425506 (D.N.J. Aug. 23, 2023). In both of those cases, this Court held that it lacked jurisdiction over out-of-state defendants who remotely employed New Jersey residents. The plaintiff in *Crosson* alleged that he was hired with the intention that he would be a remote employee and that the defendants knew he was working from New Jersey. 2023 WL 2609048 at *5. The defendants in that case communicated with the plaintiff by phone, videoconference, and mail while he was located in New Jersey, sent him a company-issued laptop for his use in

---

rely—namely, Halpern's employment as a sales director for Centroid and its eventual termination—the Court follows suit and declines to assess the claims separately.

[5] "The Supreme Court has articulated two tests for specific jurisdiction: (1) the 'traditional' test—also called the 'minimum contacts' or purposeful availment test; and (2) the 'effects' test." *Hasson*, 114 F.4th 181 at 186 (citations omitted). The test articulated here is the "traditional" test. Because the Court finds that it has jurisdiction under the "traditional" test, there is no need to analyze whether it would have jurisdiction under the "effects" test.

New Jersey, and set up remote access software to facilitate his remote work. *Id.* But because of the paucity of other New Jersey contacts—the defendants had no New Jersey office, did no New Jersey business, and never held any in-person meetings or events in New Jersey—the Court lacked jurisdiction, because "'Plaintiff's physical location in New Jersey [was] the only factor that connect[ed the] dispute to New Jersey.'" *Id.* (quoting *Magill v. Elysian Global Corp.*, 2021 WL 1221064 (D.N.J. Apr. 1, 2021)). Similarly, in *Tripp*, the Court lacked jurisdiction because "[a]lthough [the plaintiff] worked remotely from his home in New Jersey, paid New Jersey taxes, collected New Jersey unemployment and disability benefits, received office equipment from [the defendant], and stored business-related documents in his home, those actions were not particular to New Jersey and could have occurred in any state where [the plaintiff] chose to work." 2023 WL 5425506, at *6. These cases, along with others like *Magill v. Elysian Global Corp.*, 1:20-cv-06742, 2021 WL 1221064 (D.N.J. Apr. 1, 2021) and *Higgins v. Newsmax Broadcasting LLC*, 2:23-cv-03628, 2024 WL 3064844 (D.N.J. June 20, 2024), generally reflect the principle that "[a]n employee who works remotely from a home office … does not automatically subject his employer to the jurisdiction of his home state." *Tripp*, 2023 WL 5425506, at *5. This principle's application is clearest where "[p]laintiff's physical location in New Jersey is the only factor that connects [a] dispute to New Jersey." *Magill*, 2021 WL 1221064, at *7.

In other cases, this Court has held that it did have personal jurisdiction over the out-of-state employers of New Jersey employees. In *Chadwick v. St. James Smokehouse*, for example, the Court exercised jurisdiction over the out-of-state employer of a remote New Jersey employee because the employer had (1) "on a number of occasions, done business with … New Jersey businesses," (2) "hired [the p]laintiff to be [their] principal buyer and continuously relied on [the p]laintiff to perform essential functions of its business from a remote office located in New Jersey," (3) "offered to purchase and ship [the defendant's] office equipment to [the p]laintiff in New Jersey," (4) "engaged in continuous business phone and email interactions with [the p]laintiff for almost two years," and (5) "made the phone call to the forum state to terminate [the p]laintiff." No. 14-cv-2708, 2015 WL 1399121, *4 (D.N.J. Mar. 26, 2015). Through these actions, the *Chadwick* defendants "created a 'substantial nexus' with New Jersey by placing a key piece of their business in New Jersey and engaging in continuous phone and e-mail exchanged with her for the purpose of conducting that business." *Id.* (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957)). Similarly, in *Castillero v. Xtend Healthcare, LLC*, 22-cv-02099, 2023 WL 8253049 (D.N.J. Nov. 29, 2023), the Court exercised jurisdiction over an out-of-state defendant who hired a remote customer service representative residing and working in New Jersey *to serve New Jersey residents*. *Id.* at *12. The Court distinguished *Crosson* and *Magill*, recognizing that unlike "the employers in [those cases], [the defendant] purposefully availed itself of New Jersey beyond simply having [the plaintiff] as one of its remote workers." *Id.*

8

In short, there is no special, separate test for specific personal jurisdiction over remote employers. As always, the inquiry reduces to whether the exercise of jurisdiction over the remote employer is consistent with due process: *i.e.*, whether the employer had sufficient contacts with New Jersey such that it purposefully availed itself of the privileges of doing business there, whether the suit arose out of those contacts, and whether the exercise of jurisdiction comports with fair play and substantial justice. The Court's decisions in cases like *Tripp* and *Crosson* reflect the fact that remote employment of a New Jersey resident, *without more*, typically does not constitute sufficient contact with the forum to satisfy due process. As such, the Court turns to the extent and nature of Centroid's New Jersey contacts.

Based on the allegations contained in Halpern's declaration, which the court accepts as true at this stage, Centroid's New Jersey contacts are extensive. Halpern was recruited and subsequently hired specifically to "open up" the New Jersey market for Centroid. Halpern Decl. ¶ 4, ECF 7-2. Centroid had no existing New Jersey customers when they hired Halpern to open up the market. *Id.* ¶ 6. Halpern solicited hundreds of customers in New Jersey, securing business from at least ten New Jersey customers, one of whom became Centroid's largest customer. *Id.* ¶¶ 28, 30-33. Centroid executives frequently came to New Jersey to meet with clients and with Halpern—Halpern identified six Centroid executives who combined for at least 180 visits to New Jersey over the course of his ten-year tenure with the company. *Id.* ¶ 37. Halpern received his employment offer by mail sent to New Jersey, signed it in New Jersey, performed his job duties in New Jersey, and was eventually let go over the phone while he was in New Jersey. *Id.* ¶¶ 12, 16, 18-19, 51. Even the alleged discriminatory conduct at issue was directed at Halpern while he was located in New Jersey. *Id.* ¶¶ 44-49. By using Halpern's employment to reach into the New Jersey market and then continuing to do business in New Jersey for years thereafter, Centroid purposefully availed itself of the privilege of doing business in New Jersey.

Several of Centroid's New Jersey contacts gave rise to Halpern's claims here, including, for example, (1) Centroid's employment of Halpern to work in New Jersey by sending him an offer letter in New Jersey; (2) Centroid's subsequent termination of Halpern's employment transmitted to Halpern while he was in New Jersey; (3) the alleged discriminatory remarks directed at Halpern by Centroid employees and executives while Halpern was in New Jersey; and (4) Centroid's larger project of developing a New Jersey customer base through its employment of Halpern. This suit arises directly from Centroid's efforts to do business in New Jersey by hiring a New Jersey based sales director to expand its business there.

Finally, this Court's exercise of jurisdiction "comport[s] with traditional notions of fair play and substantial justice." *Hasson*, 114 F.4th at 186. "The defendant bears a high burden in convincing the court that the exercise of jurisdiction would be unreasonable." *Chadwick*, 2015 WL 1399121, at *5 (D.N.J. Mar. 26, 2015) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (2015). Defendants have not met their burden here. Other

than the inconvenience of litigating in New Jersey despite being headquartered in Michigan, Defendants have demonstrated no "other considerations [that] would render jurisdiction unreasonable." *Id.* at 476. And New Jersey's "interest in protecting its citizens from [the] grievous social wrong [of discrimination]," *Wright v. Xerox Corp.*, 882 F. Supp. 399, 410 (D.N.J. 1995), is "all the more true for New Jersey citizens working remotely for out-of-state employers," *Chadwick*, 2015 WL 1399121 at *6.

The Court has specific personal jurisdiction over Centroid. Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) is **DENIED WITHOUT PREJUDICE** subject to jurisdictional discovery.

## VI. Improper Venue Pursuant to 28 U.S.C. § 1406(a)

Centroid next argues that this case should be dismissed or, alternatively, transferred to the Eastern District of Michigan, because venue is improper in the District of New Jersey. 28 U.S.C. § 1406 provides for such relief in an appropriate case:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Centroid relies on the general venue statute, 28 U.S.C. § 1391, as the basis for its argument that venue is improper in New Jersey. That section establishes that "[e]xcept as otherwise provided by law," a civil action may be brought in

> "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

28 U.S.C. § 1391(b). Centroid argues that venue is improper in the District of New Jersey and would be proper in the Eastern District of Michigan. Centroid's principal place of business is Troy, Michigan, and in its view, a "substantial part of the events or omissions giving rise" to each of Halpern's claims took place in Michigan, not New Jersey.

Centroid's argument fails because § 1391 does "not determine the district court to which a civil action pending in a State court may be removed." 28 U.S.C. § 1390(c); *see also Polizzi v. Cowles Mags., Inc.*, 345 U.S. 663, 665 (1953) ("§ 1391 has no application

10

to this case because this is a removed action."). In cases removed to federal court from state court, venue is proper in "the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); *see also Canon Fin. Servs., Inc. v. Palmar Reprographics*, No. 18-cv-16332, 2020 WL 4463177, at *3 (D.N.J. Aug. 4, 2020) (rejecting improper venue argument in case removed to District of New Jersey); *Manley v. Navmar Applied Scis. Corp.*, No. 12-cv-5493, 2012 WL 5588757 at *2 (E.D. Pa. Nov. 14, 2012) ("§ 1391 does not apply here because Navmar removed this case from state court. Thus, the removal statute governs[.]").

Centroid removed this suit from New Jersey Superior Court in Morris County, New Jersey. Notice of Removal, ECF No. 1. As such, venue is proper pursuant to 28 U.S.C. § 1441(a). Jurisdictional discovery would have no bearing on this determination. Accordingly, Centroid's motion to dismiss under 28 U.S.C. § 1406(a) is **DENIED WITH PREJUDICE**.

## VII. Discretionary Transfer Pursuant to 28 U.S.C. § 1404(a)

As an alternative, Centroid argues that the Court should exercise its discretion to transfer this suit to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a). That section permits the Court to transfer a case "[f]or the convenience of parties and witnesses, [and] in the interest of justice," and permits the Court to transfer the case to "any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).[6]

"The burden of establishing the need for transfer [] rests with the movant." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). "[I]n ruling on defendant[s'] motion the plaintiff's choice of venue should not be lightly disturbed." *Id.* (citations omitted). In *Jumara*, the Third Circuit laid out six private interest factors and six public interest factors that district courts consider when deciding whether a discretionary transfer is appropriate:

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses— but only to the extent that the witnesses may actually be unavailable for trial

---

[6] Discretionary transfers are limited to districts and divisions in which the case "could have been brought"—in other words, courts where venue would be proper. Here, venue would be proper in the Eastern District of Michigan because Centroid is a "resident" of Michigan. *See* 28 U.S.C. §§ 1391(b)(1), (c)(2). Centroid is headquartered in Troy, Michigan. ECF No. 5-2 ¶ 5. As such, it is subject to general personal jurisdiction in the Eastern District of Michigan, which in turn makes it a Michigan resident for venue purposes. 28 U.S.C. §§ 1391(c)(2).

11

in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–880 (citations omitted). "The burden to show that the balance of convenience factors and interests of justice weigh strongly in favor of transfer lies with the defendant." *Eagle View Techs., Inc. v. GAF Materials, LLC*, 594 F. Supp. 3d 613, 619 (D.N.J. 2022) (quotation marks and alterations omitted).

A.   *Private Interest Factors*

The first two private interest factors are each party's respective forum preferences. Halpern prefers to litigate his case in New Jersey and Centroid would prefer Michigan. "A plaintiff's choice of forum is a paramount consideration in any determination of a transfer request which should not be lightly disturbed." *Def. Distributed v. Platkin*, 617 F. Supp. 3d 213, 233 (D.N.J. 2022) (quotations and citations omitted). "However, the plaintiff's choice is not necessarily decisive, particularly where the central facts of the lawsuit did not occur in the plaintiff's chosen forum." *Id.* (quotations and citations omitted).

Centroid argues that the central facts of this lawsuit—including the relevant employment decisions and at least some the alleged discriminatory conduct[7]—occurred, if at all, in Michigan. Halpern counters that he was in New Jersey when at least five allegedly discriminatory comments were directed at him, when he performed his duties, and when he was terminated. "[T]here can be more than one place in which a 'substantial part' of the acts or omissions occurred." *Ferratex v. U.S. Sewer & Drain, Inc.*, 121 F. Supp. 3d 432, 438 (D.N.J. 2015). As the Court discussed *supra* at 2-3 n.3, the Court infers from the parties' pleadings and briefs that these interactions took place virtually or by phone or mail. In this situation, "it cannot be said that a substantial part of the events occurred in one location or the other; rather, it is more appropriate to say that a substantial part of the events occurred in both locations simultaneously." *It's Intoxicating, Inc. v. Maritim Hotelgesellschaft mbH*, 2013 WL 3973975 (M.D. Pa. July 13, 2013) (analyzing venue under 28 U.S.C. § 1391). Because a substantial part of the events giving rise to this suit took place in New Jersey, Halpern's choice of forum is entitled to the Court's deference. The first two factors collectively weigh against transfer.

---

[7] Two of the three Centroid senior managers whom Halpern claims made discriminatory remarks to him live and work in Texas, not Michigan, so these comments are more likely to have taken place in both Texas and New Jersey, but not Michigan.

12

The Court next looks to where the claims arose. Substantial parts of the events giving rise to this suit occurred in multiple fora. As such, "there is no single forum in which the claim arose. In the context of a transfer motion, the better question is, which forum contains the center of gravity of the dispute, its events and transactions?" *Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 377 (D.N.J. 2000). As detailed above, several of the events underlying this action took place simultaneously in both New Jersey and in Michigan. Centroid's employment decisions were made in Michigan where Centroid is headquartered. But the center of gravity in this case appears to be New Jersey: according to Halpern's allegations, his employment was explicitly premised on opening up the New Jersey market for Defendants' business and his work in New Jersey was extensive. This factor weighs against transfer. However, because New Jersey is "clearly not the *locus in quo* to the complete exclusion of" Michigan, this factor's "persuasive weight in this motion to transfer is lessened accordingly." *Park Inn*, 105 F. Supp. at 378.

The fourth private interest factor concerns the convenience of the parties "as indicated by their relative physical and financial condition." *Jumara*, 55 F.3d at 879–880. Halpern resides in New Jersey. Centroid is headquartered in Michigan. At least one of Centroid's executives lives and works in Michigan, and others do not reside in either New Jersey or Michigan, but "travel[] to Defendants' Michigan headquarters" two to four times per year. Those witnesses would need to travel significant a significant distance to participate in the litigation regardless of whether it takes place in New Jersey or Michigan. Halpern insists that Centroid is better financially suited to travel for this litigation, as Centroid is a corporate entity with significant resources while Halpern's resources are more limited. Halpern is likely the only party for whom New Jersey is the most convenient forum, but Centroid's relative inconvenience is offset by their superior ability to afford the costs of travel. This factor is neutral.

Finally, the fifth and sixth factors consider the convenience of witnesses and the location of books and records relevant to the suit, "but only to the extent that" the witnesses or records "could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879–880. Centroid reports that the relevant witnesses and records are all located in Michigan, but neither party makes any representation that any witness or document could not be made available at trial in either forum. These factors are neutral.

On the whole, the private interest factors weigh against transfer.

B.   *Public Interest Factors*

The first public interest factor—the enforceability of a final judgment—is neutral, "as a judgment rendered in either this District or the [Eastern District of Michigan] could easily by registered in another district." *SI Power LLC v. Pathway Holdings Mgmt. V, LLC*, No. 15-cv-6101, 2016 WL 7130920 (D.N.J. Dec. 7, 2016).

The second factor concerns practical considerations which may "warrant transfer if they could make the trial easy, expeditious, or inexpensive." *Metro Life Ins. Co. v. Bank One, N.A.*, No. 03-cv-1882, 2012 WL 4464026 (D.N.J. Sept. 25, 2012). The practical considerations largely balance each other out—each practical hurdle for one party in travelling to another jurisdiction to participate in the litigation is countered by the opposing party facing the same hurdle in participating in the alternative forum. Neither party has made a clear showing that litigation in either venue would be prohibitively difficult or expensive as compared with the alternative. This factor is also neutral.

The third factor—the relatively administrative difficulty associated with the proceedings in either district—weighs in favor of transfer. The District of New Jersey has a significantly heftier caseload than the Eastern District of Michigan. While Halpern points out that the median case resolution time for cases decided between March 2023 and March 2024 was actually slightly faster in the District of New Jersey,[8] that snapshot of each court's performance in a particular year does not outweigh the backlog of cases awaiting disposition in the District of New Jersey.[9] *See Unbeatablesale.com, Inc. v. Meta Platforms, Inc.*, 2023 WL 4764813 (D.N.J. July 26, 2023) ("The District of New Jersey has a demonstrably heavier caseload than the Northern District of California. A comparison of the relative congestion in the two districts suggests that this action is likely to reach its resolution more efficiently in the Northern District of California than in this Court.").

The fourth public interest factor, the "local interest in deciding local controversies at home," is neutral where, as here, the Court finds that each forum has an interest in deciding the issues presented. *See Rouse v. Harley-Davidson, Inc.*, No. 1:20-cv-528, 2021 WL 254065 (M.D. Pa. Jan. 26, 2021). Michigan has an interest in resolving employment and contract disputes between Michigan employers and their employees, but New Jersey has an equally pressing interest in protecting New Jersey workers from employment discrimination.

The fifth public interest factor is also neutral. Defendant points out that Michigan has its own anti-discrimination law which, like the New Jersey Law Against Discrimination, prohibits discrimination against an employee based on his or her age. Plaintiff argues that New Jersey has an interest in adjudicating cases involving alleged discrimination in its own courts, but that argument concerns the local interest in deciding local controversies, not a difference in the substance of each forum's public policy. *See Rosenberg v. Garmin Int'l, Inc.*, No. 24-cv-5761, 2024 WL 3287979 at *4 (D.N.J. July 3,

---

[8] Opp. 37 n.3, ECF No. 7 (citing U.S. Courts, Federal Judicial Caseload Statistics, Table C-5 (March 31, 2024), https://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2024/03/31.

[9] Mot. 23 n.2, ECF No. 5-1 (citing U.S. Courts, Federal Judicial Caseload Statistics, Table C (March 31, 2024), https://www.uscourts.gov/statistics/table/c/federal-judicial-caseload-statistics/2024/03/31.

2024) (finding fifth public interest factor neutral where anti-discrimination statutes in each state "closely track one another"). Neither side has articulated an argument regarding the public interests of the fora with respect to Plaintiff's contract claim.

Finally, the sixth public interest factor weighs slightly against transfer. One of Plaintiff's two claims arises under New Jersey's anti-discrimination statute. As to that claim, "this New Jersey federal Court possesses greater familiarity with that applicable law." *Fernandes v. Deutsche Bank Nat'l Tr. Co.*, 157 F. Supp. 3d 383, 391 (D.N.J. 2015). But this advantage in familiarity is only slight, and will only "tip the balance in a close case." *Corsentino v. Meyer's RV Centers LLC*, 20-cv-03287, 2020 WL 4199744, at *6 (D.N.J. July 22, 2020). With respect to the contract claim, no party has briefed the question of which state's law governs, so the court is not in a position to make such a determination at this stage.

Taken together, the public interest factors weigh slightly in favor of transfer.

\* \* \*

The *Jumara* private interest factors weigh against transfer and the public interest factors weigh slightly in favor of transfer. Defendants have not met their burden of demonstrating that the circumstances "weigh strongly in favor" of transfer under 28 U.S.C. § 1404(a). Centroid's motion to transfer this case to the Eastern District of Michigan is **DENIED WITHOUT PREJUDICE** subject to jurisdictional discovery.

## VIII. Conclusion

For the reasons stated above, Defendants' motion to dismiss as to Defendant Centroid Systems Corporation is **GRANTED WITHOUT PREJUDICE**. Defendants' motion to dismiss or transfer the case under 28 U.S.C. § 1391 is **DENIED WITH PREJUDICE**. Defendants' motion to dismiss for lack of personal jurisdiction and its motion to transfer the case under 28 U.S.C. § 1404(a) are **DENIED WITHOUT PREJUDICE**. The parties are instructed to engage in jurisdictional discovery subject to the terms of the accompanying Order.

DATE: October 21, 2024

WILLIAM J. MARTINI, U.S.D.J.